## MILLAR v. MAUNEY.

### Opinion delivered October 17, 1921.

1. MINES AND MINERALS—IMPLIED COVENANT TO DEVELOP MINE.—In a lease of lands for the purpose of exploring for diamonds and other precious stones and minerals upon a royalty basis, there is an implied covenant on the part of the lessee that he will with proper diligence search the land described in the lease for minerals and develop the same.

2. MINES AND MINERALS—ABANDONMENT OF LEASE.—Where the conduct of the lessees in mining leases, given in consideration of a royalty to be paid, is such as to show that the lessees do not intend in good faith to perform the covenants by which they are bound, they have, in legal effect, rescinded those covenants and released the lessors from the obligations of the contract, and the latter are justified in treating the contract as rescinded.

3. MINES AND MINERALS—ABANDONMENT—REMEDIES OF LESSOR.—Where a lessee in a mining lease, the consideration of which is a royalty to be paid, has, after a reasonable time, failed to begin and to continue the work of development and exploration provided in the contract, the lessor has three remedies, viz., (1) he may sue in equity to cancel the contract and recover incidental damages; (2) he may sue at law for damages for breach of the contract; or (3) he may treat the contract as rescinded and sue at law to recover possession of the property leased.

4. TRIAL—TRANSFER TO EQUITY.—Where the lessors in a mining lease in an action at law sought to recover the leased property, alleging that the lessees had abandoned the lease, allegations in the answer that the lessors had annoyed and harassed the lessees by lawsuits and otherwise and prevented them from fulfilling their contract held not sufficient to entitle the lessees to have the cause transferred to equity or to have injunctive relief against interference with the property.

5. EVIDENCE—RELEVANCY.—Where the lessors in a mining lease alleged a breach of the covenants therein by reason of non-performance of the contract on the lessees' part since a certain date, it was not error to refuse to permit the lessees to prove due diligence on their part prior to that date.

6. EVIDENCE—RELEVANCY.—It was not error to permit lessors of a diamond mine, seeking to enforce a forfeiture for nonperformance of the lessees, to prove what might have been accomplished by the lessees in testing the extent of the "hardibank" by a diamond drill, instead of by shaft, such testimony being relevant on the issues of diligence and good faith of the lessees.

7. MINES AND MINERALS—FORFEITURE OF LEASE FOR NONPERFORMANCE.—Where the lessors, by their conduct in instituting law suits or otherwise, put obstacles in the way of the lessees which caused them to fail to perform their covenants, the former would be estopped from setting up an abandonment or forfeiture by the lessees.

8. MINES AND MINERALS—LEASE—ABANDONMENT.—The good intentions of a lessee in a mining contract given on a royalty basis will not avail him unless he has the ability to perform, and actually does perform, the covenants of his contract within a reasonable time; and he will be held to have abandoned his right or privilege if he, without fault of the lessor, is unable after a reasonable time to perform such covenants.

Appeal from Pike Circuit Court; *James S. Steel,* Judge; affirmed.

*Tompkins, McRae & Tompkins* and *Fordyce, Holiday & White,* for appellants.

The court erred in refusing to transfer the cause to chancery. Cancellation of instruments is a recognized ground of equity jurisdiction. 96 Ark. 251.

The lease contained no clause for forfeiture. It was error to overrule defendant's demurrer. A law court cannot order a forfeiture. 41 Ark. 532; 24 Cyc. 1349, citing cases; Wood, Landlord & T. p. 453; 1 Underhill, Landlord & T. p. 625; Tiffany, Landlord & T. p. 1366.

Forfeitures are regarded with disfavor. Ordinarily where forfeitures are desired they are expressed in the contract. 100 Ark. 568; 125 Ark. 110.

*Rose, Hemingway, Cantrell & Loughborough,* and *W. C. Rodgers,* for appellees.

This was not an action to cancel an instrument. It was an action to recover land. The cause should not have been transferred. When the tenant's term expires from any cause, the landlord may bring ejectment. Wood, Landlord & T. § 571.

While forfeitures are not favored, equity will cancel a contract where there is an abandonment of performance. 100 Ark. 568.

WOOD, J. This action was instituted by the appellees against the appellants in the Pike Circuit Court April 20, 1920, to recover the possession of certain lands alleged to contain diamonds. The appellees alleged in substance that the appellee Bettie L. Mauney is the widow, and that the other appellants are the children and sole heirs at law of M. M. Mauney, deceased, who leased the lands in controversy in 1912 to the appellants; that the lease was for a period of fifty years, beginning January 1, 1912. There was a condition in the lease that the lessee, his associates and assigns, undertake "to diligently and faithfully" prosecute the work of development of the property as outlined in the lease in a scientific and practical manner   *   *   *   by taking such preliminary steps toward the preparation of plans and purchases of machinery necesary to carry on the work in contemplation, and to erect and install a modern washing and concentrating plant of African type within one year from April 10, 1912, and in good faith and with diligence to treat and wash for the recovery of diamonds and other precious stones a minimum of 10,000 loads of material from the first-described tract of land known as the Mauney diamond property during each and every year of this lease, and as much more as can reasonably be done, a load being a unit of measure and sixteen cubic feet. The lease also provided that the lessor should have one-fourth of all diamonds and other precious stones and valuable minerals recovered from the land. The lessees were to have the management and sale of the diamonds, and every three months the lessees should fix a price for

the product of the mine, and the lessor was given the right to buy the diamonds by paying to the lessees three-fourths of the price thus fixed. If no price was fixed, the output was to be sold to the lessee, and one-fourth of the proceeds of the sale was to be paid to the lessor.

The complaint further alleged that the lessees "covenanted and agreed with the lessor that the operation undertaken shall be prosecuted and carried on in good faith and with loyalty and fidelity to all the parties to the lease, and agreed to furnish the lessor an accurate statement of the number, character, quality and weight of all diamonds and other valuable minerals taken from said mine, together with quarterly statements of sales made, with payment in full for all royalties due to the lessors under the lease contract;" that since the 27th of April, 1918, no reports of the recovery of diamonds had been made nor an opportunity given the lessors to purchase the output, nor had the lessees washed and treated as much as 10,000 loads of material; that the property had been in possession and under the control of the appellants before and since April 27, 1918; that appellants were holding the same under and by virtue of the lease mentioned, and upon no other ground whatever. The concluding portion of the complaint is as follows:

"That the defendants have not substantially complied with said contract; that they have, on the contrary, refused to even attempt to carry out the terms thereof in good faith as required thereby; that they have lain idle and ceased operations ever since April 27, 1918 to the time of filing this complaint (April 1920); that they have not recovered any diamonds in that time, although during the year 1914 they reported the recovery of several hundred diamonds, and hundreds in other years prior to April 27, 1918. That the plant on the site at Kimberly was burned on or about January 13, 1919. since which time, as well as before, there has been no effort on the part of the defendants to operate in good faith under said contract; that they have abandoned all work under said contract, and are arbitrarily and mali-

ciously holding possession of said land mentioned in said lease contract without right and in violation of the rights of the plaintiffs to the full enjoyment thereof, and to any benefit they may have by reason of operating or controlling said mine themselves, or having others to do so who will be faithful to such contracts as the plaintiffs might enter into.

"The defendants have done no work in the said Mauney mine since April 27, 1918, and have not attempted to do any since said time. On the contrary, they have abandoned the said mine and the operation and development thereof completely and in every way since April 27, 1918, since which date they have failed, neglected and refused to substantially comply with and conform to the requirements of said lease, and by reason of the abandonment thereof as herein set forth, they have ever since April 27, 1918, lost and forfeited all right of possession of said land mentioned in said lease and supplement thereto. That the plaintiffs are owners of all of said land and entitled to the possession thereof."

The lease was made an exhibit to the complaint. The appellants answered and set up that, subsequent to the lease, there was an agreement by which the written reports required in the lease were dispensed with and it was agreed that the diamonds should be divided in kind. They allege that the diamonds already recovered had, by order of the chancery court in a former suit, been brought into court and held there until May, 1920, when they were delivered back to the appellants, and that appellants had been trying to divide the diamonds ever since, and had tendered them in a suit pending between the parties in federal court. The answer alleged that, under the terms of the supplemental lease, the parties were authorized, when it became necessary to make a change to underground system in mining, to have such time as was necessary for so doing without forfeiting the lease; that in 1917 appellants determined that it was necessary to resort to underground mining, but that by reason of the war with Germany they could not secure

the necessary labor for doing the necessary excavation and running the washing machine until the 13th of January, 1919, when the plant was destroyed by fire of incendiary origin. They admitted that since April, 1918, they had not washed as much as 10,000 loads of dirt, and alleged that they were not required to do so. They alleged that, ever since the making of the lease, the appellees had persistently and without right constantly engaged them in litigation, having filed against them more than thirty separate suits, all of which have been decided adversely to the appellees; that, notwithstanding the annoyance and harassments, appellants had expended more than $150,000 in undertaking to develop the mine; that the product of the mine for the last three years has been tied up by the court at the instance of appellees, who had refused to fix a price upon them or to divide them as provided by the verbal agreement made in 1916; that it will cost a quarter of a million dollars to reconstruct the plant, and that, by reason of the annoyance and harassments caused by the appellees, the appellants had been hampered in making their necessary financial arrangements; that their labor had been disorganized, and that one of the appellees sought to assassinate two of the appellants on the public highway; that diamond-bearing dirt had been uncovered on about five acres of the mine, and that appellees had wrongfully engaged the appellants in litigation for the purpose of fraudulently undertaking to secure a cancellation of the lease for the purpose of appropriating to the use of the appellees the labor and expenditures of appellants; that appellants during the last seven years had not had as much as three months free from litigation in which to undertake the development of the mine; that the mine is in the shape of a V with the point extending toward the south, and the northern part of the mine is covered by non-diamond bearing rock, the extent of which is not known, and cannot be known, until the appellants are permitted to sink a shaft to determine how far down this rock extends. The answer concluded with a prayer that it be taken as a

cross-bill, and that the court fix a reasonable time within which the appellants may peacefully pursue the prosecution of the work, and that until that time expires appellees be restrained from further proceedings.

Embodied in the answer was a general demurrer which challenged the sufficiency of the complaint to state a cause of action, and also the jurisdiction of the court. There was also a motion to transfer the cause to the chancery court. The demurrer and motion to transfer were overruled, and the cause was sent to the jury to be heard on the evidence and the instructions. Such other facts as may be necessary will be stated as we proceed. The trial resulted in a verdict and judgment in favor of the appellees, which judgment appellants are seeking to reverse on the following grounds:

1. That the complaint did not state a cause of action giving the trial court jurisdiction, and that the court therefore erred in overruling the demurrer. The contract set up in the complaint does not create the ordinary relation of landlord and tenant. It is not a contract by which the lessees are to occupy the property for residence, mercantile, manufacturing or agricultural purposes, and in which the lessor, landlord, receives a certain stipulated sum for one month or one year for the use of the premises leased. But it is a contract for the exploration and development of the leased lands "for diamonds and other precious stones and valuable minerals." As compensation for the use of his lands for such purposes, the lessor receives by way of rental or royalty a certain percentage of the output from the development of the leased property. In other words, this is strictly a lease for "mining purposes," such as was under consideration by this court in the case of *Mansfield Gas Co. v. Alexander,* 97 Ark. 167. In that case we said: "In the construction of mineral leases such as is involved in this case, the authorities uniformly hold that there is an implied obligation on the part of the lessee to proceed with the search and also with the development of the land with reasonable diligence according to the usual course

of such business, and that a failure to do so amounts in effect to an abandonment and works a forfeiture of the lease." And further: "According to the uniform holding of the authorities, the law will read into this lease a covenant on the part of the lessee that it will with due and proper diligence search the land described in the lease for minerals and with due and proper diligence develop the same. This implied covenant is in effect a condition upon which the lease was made; a failure or refusal to perform that condition results in a forfeiture of the lease."

In the above case many authorities are cited to support the rule announced therein. The same doctrine is announced in an action in equity brought by the Mauneys to cancel the lease involved herein. *Mauney* v. *Millar,* 134 Ark. 15-21, and also in *Millar* v. *Mauney,* 142 Ark. 486-490. See also *Mansfield Gas Co.* v. *Parkhill,* 114 Ark. 419. Although the above doctrine was enunciated in suits in chancery to cancel the lease, it is equally applicable in actions at law to recover the possession of the property if there has been such a failure on the part of the lessees, still in possession, to observe the covenants by which they are bound as to be tantamount to an abandonment of those covenants and a consequent forfeiture of all their rights under the contract. If the conduct of the lessees in contracts of this nature is such as to show that they do not intend in good faith to perform the covenants by which they are bound, then they have, in legal effect, rescinded those covenants and released the lessors from the obligations of the contract, and the latter are justified likewise in treating the contract as rescinded.

As was said in *Huggins* v. *Daley,* 99 Fed. 606-613: "Such leases vest no present title in the lessee, and if, at any time, the lessee has the option to suspend operations, the lease is no longer binding on the lessor because of want of mutuality; and, where the only consideration is prospective royalty to come from exploration and development, failure to explore and develop renders the

agreement a mere *nudum pactum,* and works a forfeiture of the lease, for it is of the very essence of the contract that work should be done." The reason for the rule is that where the lessor receives as royalty or rental a certain percentage of the output of the lands as his only compensation for their use by the lessee for exploration and development, when such work ceases, his compensation ends, and the consideration for the lease fails. In such contracts the lessee usually expressly undertakes, as was the case here, to "diligently and faithfully prosecute the work of development," and, if there is no express covenant to that effect, as we have seen, such a covenant will be implied from the very nature of the contract. Unless it is otherwise provided in the lease, it is always in the contemplation of the parties to such a contract that the lessee is able, financially and in every other way, to perform his undertakings in the time and manner specified in the contract. If, after a reasonable time, he fails to begin and to continue the work of development and exploration provided in the contract, but nevertheless holds possession and exercises control over the leased lands for promotion purposes or financial exploitations, he has by such conduct worked a forfeiture of his rights under the lease and may thereafter be treated as having abandoned his contract and as holding the land as a trespasser adversely to the lessor. In other words, the lessee under such a contract will not be allowed to speculate upon the chance of being able at some indefinite and unreasonable time in the future to begin and to continue the work of exploration and development required of him under the covenants of his contract. When the contract has been thus virtually rescinded and abandoned by the lessees, the lessors have three remedies, either of which they may pursue. They may go into a court of equity to cancel the contract and recover any incidental damages; they may in a separate action at law sue for damages for breach of the contract; or they may treat the contract as rescinded and sue to recover possession of the property. 1 Pomeroy's Equity Juris-

prudence, § 110. That an action at law by the lessor to recover possession of the property leased is an appropriate remedy in such cases is well sustained by the authorities. *Aye* v. *Philadelphia Co.,* 193 Pa. St. Rep. 451; *Paine* v. *Griffiths,* 86 Fed. 452, 38 Atl. Rep. (N. J. Law) 813. See also *Acme Oil & Mining Co.* v. *Williams,* 74 Pa. 296 and cases there cited. 1 Pomeroy's Equity Jurisprudence, *supra;* White, Mines & Mining, § 425. We conclude, therefore, that the appellees had the right to institute this action at law to recover the possession of the lands in controversy. The allegations of the complaint are sufficient to state a cause of action, provided they state facts showing an abandonment of the lease contract by the appellants.

We will not repeat here all the allegations of the complaint. Among other allegations are the following: "That at no time since April 10, 1918, have the defendants washed and treated for the recovery of diamonds as much as 10,000 loads of material from the said Mauney mine, and they have done no work in the said Mauney mine since April 27, 1918, and have not attempted to do any since said time; that at no time since April 27, 1918, have the defendants, or any of them, reported to these plaintiffs, or any of them, the recovery of any diamonds or other precious stones; neither have the defendants, or any of them, given these plaintiffs, or any of them, an opportunity to buy the output of said mine at any time since April 27, 1918." These and other allegations in the complaint were sufficient, if true and undenied by the appellants, to constitute a cause of action at law against the appellants for the abandonment of the contract. On demurrer we must treat all the allegations, properly pleaded, as true and admitted. The court was correct therefore, in overruling the demurrer to the complaint.

2. The answer of the appellants contained allegations which, in effect, denied or completely explained all material allegations of the complaint and showed that there had been no abandonment by them of the property. They admitted that they had not since April, 1919, washed

as much as 10,000 loads of dirt, and alleged that by the terms of the supplemental lease they were not required to do so. They alleged that their washing machinery was destroyed by fire of incendiary origin on January 13, 1913; that the product of the mine had been tied up in the courts on account of litigation at the instance of the appellees, who had refused to fix the price of the product or to divide them; that appellants had not made reports and divisions of the output of the mine as provided in the contract because there was a subsequent verbal agreement entered into in 1916 which made the same unnecessary. They alleged generally that in a litigation of more than thirty separate suits filed by the appellees against the appellants, all of which had been decided adversely to the appellees, the appellants had been subjected to annoyance and harassment of various kinds, including intimidation of their labor, and an attempt by the appellee to assassinate two of the appellants, all of which was for the purpose of fraudulently undertaking to secure a cancellation of the lease and requiring the labor expended in undertaking to develop the mine with a view of appropriating it to their own use and benefit; that during the last seven years appellants had not had as much as three months free from litigation in which to undertake the development of the mine. They set up that, notwithstanding the litigations, they had made large expenditures in undertaking to perform the contract on their part. In short, they denied that there had been an abandonment of their contract, and alleged on the other hand that they in good faith had performed and intended to perform all of their covenants under said contract. They made their answer a cross-complaint and asked, by way of affirmative relief, that they be allowed to peacefully prosecute their work under the contract for at least one year, and that the appellees be restrained from proceeding against them during such time.

It is unnecessary to discuss in detail all of the allegations in appellants' answer. Such of them as were relevant were sufficient to raise the issue as to whether or not

the appellants had abandoned their contract, but they were not sufficient to entitle appellants to have the cause transferred to the chancery court, and to entitle them to the injunctive relief which they prayed.

The appellants do not allege any specific facts in their answer to show in what manner the various suits instituted by the appellees against them had operated to interfere with the performance of their covenants under said contracts since April 27, 1918. The allegations of the answer show that all suits prior to April 27, 1918, as well as the suits instituted on that day, had been determined in appellee's favor, and they do not allege specific facts showing how the suit of April 27, 1918, which was decided in their favor by this court on March 8, 1920, had prevented the appellants in the meantime from carrying out their contract. Such facts properly pleaded, if proved, would be a complete defense on the issue of abandonment. Moreover, a court of equity has no power to restrain the appellees from seeking redress in a court of law for an alleged abandonment by the appellants of the contract under review and the resultant forfeiture of their alleged rights thereunder. Counsel for appellants have not cited us to any authority, and we do not know of any, which holds that a court of equity has such power. Such of these matters as were pertinent appellants could allege and prove in their defense of the action at law on the issue as to whether there had been an abandonment by them of the contract. But appellants could not by such allegations lift the action at law out of the jurisdiction of the law court and have the same transferred to the chancery court. The court was therefore correct in overruling the motion to transfer.

3. Appellants complain because the trial court refused to permit them to prove that, beginning with April 1913, about a year after the lease contract in controversy was executed, the appellees instituted a suit against them to cancel the lease, and since that time to the time of the present action had been in litigation with the appellants aggregating more than thirty-five suits, all of which, be-

fore this action was instituted, had been decided adversely to the appellees; that the effect of these suits had been to disorganize their labor and make it impossible for them to secure financial assistance, and that but for these suits the testing of the mine would have been completed; that these suits had cast a cloud upon appellants' title and had deterred parties who had promised them financial assistance from rendering such assistance, and that all this testimony was competent as tending to prove that the appellants in good faith had endeavored to carry out their lease contract and had not before or since April 27, 1918, abandoned the same.

The appellants alleged in their answer that all litigation prior to the present action had been decided in their favor. In the case of *Mauney* v. *Millar,* 134 Ark. *supra,* we said: "Right of action in this case, if there is one, extends back no further than the last of the adjudications thereof, and must be tested solely by testimony tending to show a breach of the contract since that time." That case was decided April 22, 1918, and on April 27, 1918, the last suit, the one just prior to the present action, was instituted and disposed of on March 8, 1920. A little more than a month thereafter, April 20, 1920, the present suit was instituted.

In the present action the appellees do not claim that there had been any abandonment of the contract prior to April 27, 1918, and only assert that appellants since that time had "lain idle and ceased operations," and thus had completely abandoned the mine and the performance of their covenants under the lease contract. In one of its instructions the court told the jury that "the burden is on the defendants to show by a preponderance of the evidence that the shooting of Walter Mauney, or the pendency of suits during the period from April, 1918, to April, 1920, actually hindered or delayed the lessees in the performance of the contract, and, unless you find that they did delay or hinder the lessees in performing the contract, you should disregard the testimony as to such shooting and such suits." . The court allowed the appellants in

their testimony to cover all the time between the 27th of April, 1918, and April 20, 1920. That embraces the period of the alleged abandonment of the contract by the appellants. The court gave the appellants the privilege of proving by competent testimony what had been the effect, if any, of the suits instituted by the appellees against appellants, since April 27, 1918, in the matter of interfering with, or putting obstacles in the way of appellants' performance of their contract. For instance, the court ruled that defendants (appellants) "may prove any injury to their credit by the bringing of the libel suits since April, 1918, up to the bringing of this suit, the effect they had upon their labor, and upon capital or borrowing of money."

Since the appellees, by the present action, have not challenged the loyalty and fidelity of appellants to their contract obligations prior to April 27, 1918, it occurs to us that it would not be germane to the issues in this case to prove that appellees had not fulfilled their covenants, nor that appellants, in good faith, had kept theirs to April 27, 1918. Such matters were beyond the scope of the issue in the present action, and the court correctly so ruled.

The court likewise did not err in admitting testimony tending to prove what might have been accomplished by appellants in testing the extent of the "hardibank" by a diamond drill, instead of by shaft. This testimony was relevant on the issues of the diligence and good faith of appellants. We find no error in any of the rulings of the court in admitting or excluding testimony.

As to the law of the case, but little need be added to what we have already said in passing on the demurrer and motion to transfer. Since the instrument herein did not convey or grant to appellants any legal title or estate in the land itself, but only the privilege or right of possession for the purpose of mining, the appellants could abandon such right or privilege by a failure to perform their covenants for exploration and development as specified in the lease. See 1 Cor. Jur. p. 10, § 14. Good faith is required of both parties in the observance of their cov-

enants. If the appellees, by their conduct in instituting lawsuits or in any other manner, put obstacles in the way of appellants which caused them to fail to perform their covenants, then the appellees would be estopped from setting up an abandonment or forfeiture by the appellants.

The good intentions of the lessee in such contracts to perform the same will not avail him unless he also has the ability to perform, and actually does perform, the covenants of his contract within a reasonable time. To abandon means to quit; usually the voluntary relinquishment of a right or privilege which one enjoys. But in cases like this the lessee will be held to have abandoned his right or privilege if he, without fault on the part of the lessor, is unable after a reasonable time to perform the covenants of his lease. Abandonment is ordinarily a mixed question of law and fact. White, Mines and Mining, p. 561, § 423. It was so here. It cannot be said that the undisputed evidence showed that appellants had not abandoned, nor can it be said as a matter of law that they had abandoned and forfeited, their rights under the lease. The issue of fact in this case was therefore one peculiarly for the jury to determine from all the facts and circumstances adduced in evidence under the guide of appropriate instructions from the trial court. The instructions of the court show that it understood and correctly interpreted the contract. Its charge, as a whole, fully and fairly covered every phase of the evidence. These instructions but declared elementary and familiar principles of law applicable to the particular facts which the testimony adduced tended to prove in support of the contentions of the respective parties. There is no error in the rulings of the circuit court, and its judgment must therefore be affirmed.

SMITH, J., dissenting.