DRUMMOND v. ALPHIN.

Opinion delivered March 12, 1928.

1. MINES AND MINERALS—DRILLING OF WELLS—COMMENCEMENT OF
   OPERATION WITHIN YEAR.—Where an oil and gas lease, covering
   27 scattered tracts of land, provided that in case operations were
   not commenced and prosecuted with due diligence within one
   year, the lease should be void, but that a forfeiture could be pre-
   vented by payment of quarterly rentals until drilling operations
   were commenced, after which no rent was to be paid, a drilling
   of two wells *held* not a compliance with the lessee's obligation
   to continue development of lands.

2. MINES AND MINERALS—FORFEITURE OF LEASES.—Where an oil and
   gas lease, covering 27 scattered tracts of land, provided that
   forfeiture for the lessee's failure to begin operations within one
   year, would be prevented for five years or until drilling operations
   were commenced, failure of the lessees to begin development work
   on other tracts of land after drilling of discovery wells on two
   individual tracts, authorized a cancellation of such portions of
   the original leases as had not been explored.

Appeal from Union Chancery Court, Second Divi-
sion; *George M. LeCroy,* Chancellor; affirmed.

*Marsh, McKay & Marlin,* for appellant.

*L. B. Smead, Robert C. Knox, H. P. Smead, John
Bruce Cox* and *C. E. Wright,* for appellee.

SMITH, J.   On April 21, 1919, J. S. Alphin and wife
executed to Vincent L. Hanson an oil and gas lease
covering 1,947 acres of land in Union County, Arkansas.
The lease described twenty-seven tracts of land, which
are widely scattered over the county, some being as much
as thirty miles from others, and, altogether, the lands
were in eleven different townships. The lease contained
the grant of all rights usually found in such instru-
ments, and reserved to the lessor "the equal one-eighth
royalty or share of all oil produced and saved upon the
premises, to be delivered at the well," etc., and required
the lesssee to pay $200 per annum, payable quarterly,
for the product of any well producing gas exclusively.

It was provided in the lease that, in case operations
were not commenced and prosecuted with due diligence
within one year, the grant should be void, but that for-

feiture might be prevented by the lessee paying quarterly, from year to year for five additional years, a rental of twenty-five cents per acre until drilling operations are commenced, after which no rent was to be paid, and that "the completion of a well shall operate as full liquidation of all payments under this provision during the remainder of the term of this grant." No rent was to be paid while drilling operations were being carried on in good faith, whether these operations were successful or not.

It was further provided that: "In case the party of the second part should bore and discover either oil or gas, then in that event this grant, incumbrance or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of said product, and as much longer as oil or gas may be produced in paying quantities thereon; the party of the second part binding itself, after discovery of oil or gas in paying quantities, to prosecute diligently the work of production of oil or gas, and deliver the one-eighth of the oil as above provided and the payment of two hundred and no/100 dollars per annum for gas (if a gas well) as above provided." "This grant is not intended as a mere franchise, but is intended as a conveyance of property above described for the purpose herein mentioned, and it is so understood by both parties to this agreement. Lessee shall have the right to surrender this lease, or any portion thereof, by written notice to the lessor, describing the portion of above tracts that it elects to surrender, and the acreage rental hereinbefore set forth shall be reduced in proportion to acreage surrendered."

In August, 1926, Alphin, the lessor, brought suit, in which he set out the above lease, and alleged that Hanson, the lessee, had sublet or assigned the lease as to various portions of the lands there described, and these sublessees or assignees, twenty or more in number, were made parties defendant along with Hanson.

The complaint alleged an assignment of the lease in so far as the same covered or affected the west half of the southeast quarter of section 24, township 16 south, range 16 west, which, by mesne conveyances, was acquired by the Unity Petroleum Company, and that company had developed the eighty-acre tract described by drilling a well which was producing oil. It was alleged that, as to the remaining 1,867 acres, there had been no development or prosecution for oil or gas, and it was prayed that the lease be canceled as a cloud upon the title, except as to the eighty acres above described.

Some of the defendants filed no answer or other pleading, and a decree by default was rendered against them.

Hanson and certain other of the defendants filed a demurrer to the complaint, upon the grounds that it did not state a cause of action entitling plaintiff to the relief prayed, and because "the complaint shows on its face that the oil and gas lease referred to in plaintiff's complaint is a single and undivided contract, and that, before the term of years named in said lease had expired, oil and gas was being produced from said leased premises, and that, by the terms thereof, said oil and gas lease is to remain in force and effect so long as oil and gas are produced from the leased premises." The demurrer to the complaint was overruled, and, defendants electing to stand on the demurrer, the relief prayed was granted.

Alphin also filed a suit against Fred G. Drummond *et al.*, in which he alleged the execution by himself of a lease to I. Felsenthal similar to the one given Hanson, and that Felsenthal had assigned or sublet leases to various persons. The Felsenthal lease covered 1,710 acres, lying in seventeen different townships and comprising thirty-one different tracts of land, and these lands were as widely scattered as were the lands involved in the Hanson lease. It was alleged in the complaint that, of all the assignees or sublessees of Felsenthal, only the Woodley Petroleum Company had developed a well, this

being on the southeast quarter of the northwest quarter of section 24, township 16 south, range 16 west, one of the tracts of land described in the Felsenthal lease.

The assignees or sublessees under the Felsenthal lease were made defendants, some of whom failed to answer, and, as against those who failed to answer, a decree was rendered by default, canceling the lease. Other defendants filed a demurrer similar to the one filed in the Hanson case, and, the demurrer being overruled, the defendants stood thereon, and a decree was rendered canceling their leases. The cases have been consolidated, and are presented here as a single appeal.

It is the insistence of appellants that the allegations of the complaint show such compliance with the provisions of each lease as to defeat the granting of the relief prayed, inasmuch as it is alleged in each complaint that one of the sublessees has developed a producing oil well.

Appellants rely upon the paragraph of each lease which provides that: "In case the party of the second part should bore and discover either oil or gas, then in that event this grant, incumbrance or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of said product, and as much longer as oil or gas may be produced in paying quantities thereon." Appellants interpret this language of the leases as showing that the parties contemplated that, if oil was discovered, the lessee should have twenty-five years longer in which to explore other tracts of land embraced in the lease than that upon which the original discovery well should be drilled. It is pointed out by appellants that the complaint does not allege that the drilling of additional wells is necessary to prevent draining the oil from under the lands described in the lease by other wells adjacent to these lands. In addition to the insistence that appellants have substantially complied with the requirements of the leases, it is also urged that, if there has been any breach, it is only partial, and that the lessor is therefor remitted to an action at law for damages.

Appellants cite numerous cases to sustain their contentions, but, upon the question of substantial performance of the requirements of the leases, they rely chiefly upon the decision of this court in the case of *Hughes* v. *Cordell,* 174 Ark. 757, 296 S. W. 735. It is the opinion of the majority, however, that the Hughes case is not controlling here. That case did quote with approval a syllabus from the case of *Duke* v. *Stewart* (Tex. Civ. App.), 230 S. W. 485, reading as follows: "Where owner leased as an entirety and by lease required lessees to develop the land for oil, without providing for development of any particular acre or tract thereof, the development of a portion of the land by a sublessee accrued to the benefit of the lessee, precluding the owner from declaring lease forfeited as to another portion held by lessee or successors for nondevelopment thereof." But it will be remembered that the lease in that case covered a tract of land containing only 90.26 acres. The original lease in that case was made February 16, 1920, and on September 27, 1922, the lessee contracted for the drilling of a well on a sixteen-acre tract constituting a part of the ninety-acre tract, and the first well was brought in on January 14, 1923, and seven wells were drilled altogether on the sixteen-acre tract. In that case the plaintiff, Hughes, sought to treat the assignment of a portion of the land as an abandonment of the unassigned portion, but the court held that the original lease of the ninety-acre tract was an entirety, and that the subleases were for the purpose of development of a portion thereof, and that the development of a portion of the land by a sublessee accrued to the benefit of the original lessee, precluding the owner from declaring the lease forfeited as to another portion for nondevelopment.

There is no purpose here to impair the authority of that case, but it is thought that it would be an extension of it if it were held to apply to the facts of this case.

In the case of *Duke* v. *Stewart, supra,* from which we quoted, and which we followed in the case of *Hughes*

*v. Cordell,* it was also said: "On the facts before it the trial court properly instructed a verdict for defendants, and this judgment is affirmed without prejudice as to the rights of appellants or their assigns to bring a new suit or suits, should the holders under this original lease fail to perform the obligations imposed upon them by this contract;" citing the case of *Fisher* v. *Crescent Oil Co.,* (Tex. Civ. App.), 178 S. W. 905. The obligation there referred to was that of prosecuting the work of development, and the case of *Fisher* v. *Crescent Oil Co.,* there cited, is illuminating on the exact question here in issue. The first syllabus in that case reads as follows:

"Complainant, in consideration of $6,400, conveyed all the oil and other minerals in certain land described, with the right of entry to drill and operate for oil, reserving one-eighth of all the oil produced, the lease to be void if the lessees did not commence operations by a certain date, and providing that, if oil was discovered, the lease should be in effect for 25 years thereafter, which conditions extended to the heirs and assigns of the parties. The lessees assigned to two different assignees, one of whom, within the time prescribed, brought in a producing oil well, which failed in about a year, after which the casing was drawn out, and the other of whom drilled a well, which proved to be dry. *Held,* in the lessor's suit against the second assignee to cancel the lease, that the discovery of oil by one of the assignees executed the contract and vested rights under the entire lease for the 25 years specified, but required the lessees to continue operations during such term, and that their failure to operate would work a forfeiture, though a temporary cessation of work would not."

The 25-year clause in that case reads as follows: "In case the parties of the second part shall bore and discover either oil, gas or other minerals, then in that event this grant, incumbrance or conveyance shall be in full force and effect for twenty-five years from the time of discovery of said product, and as much longer as oil, water, gas or other minerals can be produced in paying quantities thereon."

It thus appears that the 25-year clause in that case is almost identical with the 25-year clause in the instant case, and, while the court held that the discovery of oil by a sublessee vested rights under the entire lease for 25 years, yet it also held that the lessees were required to continue operations during said term, and that their failure to operate would work a forfeiture, although a temporary cessation of the work would not.

It was not the intention of this court, in the case of *Hughes* v. *Cordell, supra,* to extend the doctrine of the cases there cited and followed, and it is now held that, while the development of a portion of a lease inures to the benefit of the original lessee, that fact does not relieve the original lessee from the duty of proceeding with the development of the tract as an entirety in the manner contemplated by the express and implied covenants of the lease. The question therefore arises whether the drilling of one well on each lease complied with and discharged the obligation of the original lessee to continue to develop the lands for oil or gas, or might wait twenty-five years before doing so.

If appellants are correct in their interpretation of the contract, they have, for the period of twenty-five years from the date of the drilling in of the respective discovery wells, discharged their obligations to the lessor, and during this time will not be required to pay even the annual rental of twenty-five cents per acre, for a producing well has been brought in under each lease, nor are they required to surrender any portion of the lands on which they conclude drilling would not be profitable, as the lease contract authorizes them to do.

As has been said, the lands here involved are widely scattered, and the drilling of the wells which are producing oil has not determined whether oil might not be discovered under other lands. It is true, as appellants assert, that the complaint does not allege that there is a drainage of oil from under these lands by wells which have been drilled by other persons, but it is true also that, unless appellants explore for oil, the

lands may remain undeveloped as long as the lease is outstanding.

The leases were made in 1919, and suits to cancel them were brought in August, 1926. One of the pro-. ducing wells was drilled in April, 1923, and the other in May of that year, so that more than three years elapsed after the last well had been brought in before the institution of the consolidated suits, and, under the allegations of the complaint, nothing has been done towards the further development of the land during that interval.

In the case of *Millar* v. *Mauney,* 150 Ark. 161, 234 S. W. 498, it was said:

"The contract set up in the complaint does not create the ordinary relation of landlord and tenant. It is not a contract by which the lessees are to occupy the property for residence, mercantile, manufacturing or agricultural purposes, and in which the lessor, landlord, receives a certain stipulated sum for one month or for one year for the use of the premises leased. But it is a contract for the exploration and development of the leased lands 'for diamonds and other precious stones and valuable minerals.' As compensation for the use of his lands for such purposes, the lessor receives, by way of rental or royalty, a certain percentage of the output from the development of the leased property. In other words, this is strictly a lease for 'mining purposes,' such as was under consideration by this court in the case of *Mansfield Gas Co.* v. *Alexander,* 97 Ark. 167, 133 S. W. 837. In that case we said: 'In the construction of mineral leases such as is involved in this case, the authorities uniformly hold that there is an implied obligation on the part of the lessee to proceed with the search and also with the development of the land with reasonable diligence, according to the usual course of such business, and that a failure to do so amounts, in effect, to an abandonment, and works a forfeiture of the lease.' And further: 'According to the uniform holding of the authorities, the law will read into this lease a covenant on the part of the lessee that

it will, with due and proper diligence, search the land described in the lease for minerals and with due and proper diligence develop the same. This implied covenant is in effect a condition upon which the lease was made; a failure or refusal to perform that condition results in a forfeiture of the lease.' "

After reviewing a number of authorities, including several prior decisions of this court, it was there further said:

"If the conduct of the lessees in contracts of this nature is such as to show that they do not intend, in good faith, to perform the covenants by which they are bound, then they have, in legal effect, rescinded those covenants and released the lessors from the obligations of the contract, and the latter are justified likewise in treating the contract as rescinded." And this case is also authority for holding that an action may be brought in equity to cancel a lease under such circumstances.

Through the industry of counsel many of, and possibly all, the leading cases bearing on the question here under review have been cited and discussed. We do not review these cases or attempt to distinguish them, for to do so would unduly protract this opinion, as the authorities are not harmonious. The majority are content, under the allegations of the complaint, to say that appellants have not, except as to the two tracts upon which producing wells have been developed, prosecuted the work of development which the original lease contracts contemplated, after bringing in the discovery wells. As supporting this view, the following cases may be cited: *Mansfield Gas Co.* v. *Alexander,* 97 Ark. 167, 133 S. W. 837; *Mansfield Gas Co.* v. *Parkhill,* 114 Ark. 419, 169 S. W. 957; *Mauney* v. *Millar,* 150 Ark. 161, 234 S. W. 498; *Murdock* v. *Sure Oil Co.,* 171 Ark. 61, 283 S. W. 4; *Brewster* v. *Lanyon Zinc Co.* (C. C. A.), 140 Fed. 801; *Papoose Oil Co.* v. *Rainey,* 89 Okla. 110, 213 Pac. 882; *Fox Petroleum Co.* v. *Booker,* 123 Okla. 276, 253 Pac. 33; *Alford* v. *Dennis,* 102 Kan. 403, 170 Pac. 1005; *Brown* v. *Union Oil Co.,* 114 Kan. 166, 270 Pac. 286;

*W. T. Waggoner Estate* v. *Sigler Oil Co.* (Tex. Com. App.) 284 S. W. 291; *White* v. *Green River Gas Co.* (C. C. A.), 8 Fed. (2d) 261; *Id.* 270 U. S. 660, 46 Sup. Ct. Rep. 356, 70 L. ed. 786; *McCamey* v. *Freel,* 121 Kan. 189, 246 Pac. 500.

Upon the question of the remission of appellee to an action at law for a suit for damages for a partial breach of the contract, it may be said that the original lessee has, by assigning and subletting various portions of the leases, made many leases out of the various tracts of land, and no one of these assignees or sublessees could be held responsible for the dereliction of other assignees or sublessees. Indeed, two of them have complied with their subleases by developing the land, and they could not be sued for damages, nor would it be equitable to cancel their leases because of the default of others.

In the case of *Millar* v. *Mauney, supra,* it was held (to quote the third syllabus) that, "Where a lessee in a mining lease, the consideration of which is a royalty to be paid, has, after a reasonable time, failed to begin and to continue the work of development and exploration provided in the contract, the lessor has three remedies, viz: (1) he may sue in equity to cancel the contract and recover incidental damages; (2) he may sue at law for damages for breach of the contract; or (3) he may treat the contract as rescinded, and sue at law to recover possession of the property leased."

The majority are of the opinion, upon the authority of the cases previously cited herein, that appellants have failed, beyond a reasonable time, to begin the work of exploration and development as provided in the original leases, after drilling the discovery wells, and that the cancellation of such portions of the original leases as had not been explored was properly decreed.

A case which contains an exhaustive review of the authorities and which is thought to sustain the decrees here appealed from is that of *Brewster* v. *Lanyon Zinc Co.,* 140 Fed. 801. This is a decision of the Circuit Court of Appeals of the Eighth Circuit, the opinion being

delivered by Mr. Justice Van Deventer, then a circuit judge.

It is therefore the opinion of the majority—in which view the writer does not concur—that the decrees of the court below are correct, and should therefore be affirmed, and it is so ordered.