EZZELL *v.* OIL ASSOCIATES, INC.

Opinion delivered January 13, 1930.

804

806

*Patterson & Rector,* for appellants.

*Marsh, McKay & Marlin,* for appellee.

HART, C. J., (after stating the facts). As will be seen from our statement of facts, the lease contains no express covenant as to the number of wells that should be drilled after the completion of the first one producing oil or gas in paying quantities. It did not contain any covenant requiring the drilling of producing wells to prevent oil or gas from draining from the leased premises

to the adjoining lands, where wells by other parties might be drilled and operated.

It is the contention of the lessors that there was an implied covenant, on the part of the lessee, to prosecute the development work with reasonable diligence, and that it was its duty, after the completion of the first well, to continue the search for and the production of either oil or gas with reasonable diligence on the remaining part of the leased premises.

On the other hand, it is the contention of the lessee that it was not required to further continue its operations for oil or gas, nor to pay the rental provided in the lease and supplemental contract after the failure to do so, but that the lease continued in force under its own terms as long as oil or gas continued to be produced in paying quantities on the well brought in section 11 on the leased premises.

A clear and comprehensive statement of the rule of law governing cases of this sort may be found in a case note to 11 L. R. A. (N. S.), commencing at page 417. After stating that oil and gas leases are peculiar in their nature, and that courts are more inclined to construe a lease with greater latitude as forfeiting the lease for failure to develop than in construing leases of other minerals, the editor continues as follows:

"Generally all leases of land for the exploration and development of minerals are executed by the lessor in the hope and upon the condition, either express or implied, that the land shall be developed for minerals; and it would be unjust and unreasonable, and contravene the nature and spirit of the lease, to allow the lessee to continue to hold under it any considerable length of time without making any effort at all to develop it according to the express or implied purpose of the lease; and, in general, while equity abhors a forfeiture, yet, when such a forfeiture works equity, and is essential to public and private interests in the development of minerals in land, the landowner, as well as the public, will be protected

from the laches of the lessee and the forfeiture of the lease allowed, where such forfeiture does not contravene plain and unambiguous stipulations in the lease. This principle will be more readily enforced and applied by the court as to gas and oil cases, because of the peculiar nature of those minerals, and the danger of entire loss to the lessor of oil or gas in his lands by reason of well drilling on adjacent lands.''

In Ann. Cases 1917E, p. 1126, it is said: that in oil and gas leases, where the owner of the land leases the same for a nominal sum and the further consideration of a royalty or a percentage of the profits realized by the lessee in working and developing the land, in the absence of an express agreement, there is an implied covenant that the lessee will use reasonable diligence in commencing and continuing operations. Numerous cases are cited which support the rule.

While there is a conflict in the authorities upon this subject, we think that the rule above laid down is established by our previous decisions upon the subject, as well as by the better reasoning.

In *Mansfield Gas Co.* v. *Alexander*, 97 Ark. 167, 133 S. W. 837, it was held that where a lease of land for the purpose of prospecting for gas and minerals was executed in consideration of the lessee's agreement to pay royalties upon such gas or minerals, the law implies a covenant upon the lessee's part to begin the exploration for gas and minerals within a reasonable time. In discussing the subject, the court said that the authorities uniformly hold that there is an implied obligation on the part of the lessee to proceed with the search, and also with the development of the land with reasonable diligence, according to the usual course of such business, and that a failure to do so amounts, in effect, to an abandonment, and works a forfeiture of the lease.

It was further held that where a lease of land, for the purpose of prospecting for gas and minerals, was executed in consideration of the lessee's agreement to pay royalties upon such gas or minerals, the law implies a

covenant upon the lessee's part to begin the exploitation for gas and minerals within a reasonable time. In discussing the subject, the court said that the authorities uniformly hold that there is an implied obligation on the part of the lessee to proceed with the search, and also with the development of the land with reasonable diligence, according to the usual course of such business, and that a failure to do so amounts, in effect, to an abandonment, and works a forfeiture of the lease.

Again, in *Mansfield Gas Co.* v. *Parkhill,* 114 Ark. 419, 169 S. W. 967, it was held that in every oil and gas lease a covenant is implied that the lessee will prosecute a diligent search and operation, and when the only consideration for the lease is a royalty, a failure on the part of the lessee to commence operations for a period of ten years will be held to be an abandonment, and the lessor may have the lease canceled, even though he has failed to notify the lessor of his intention to have the lease canceled.

In *Mauney* v. *Millar,* 134 Ark. 15, 203 S. W. 10, where the court had under consideration the construction of the lease of a diamond mine, it was held that where the sole benefit of a contract results from a continued performance of the contract (such as to develop a mine, to operate it, pay royalties or to divide the proceeds), where one party completely abandons the performance thereof, equity will give relief by canceling the contract. For a partial breach the parties will be remitted to their remedies at law, but for abandonment equity affords relief by rescission or cancellation.

In *Millar* v. *Mauney,* 150 Ark. 161, 234 S. W. 498, it was held that, where the conduct of the lessees in mining leases, given in consideration of royalty to be paid, is such as to show that the lessees do not intend in good faith to perform the covenants by which they are bound, they have, in legal effect, rescinded those covenants and released the lessors from the obligations of the contract, and the latter are justified in treating the contract as rescinded. In that case it was also held that where a

lessee in a mining lease, the consideration of which is a royalty to be paid, has, after a reasonable time, failed to begin and to continue the work of development and exploration provided in the contract, the lessor has three remedies, viz: (1) he may sue in equity to cancel the contract and recover incidental damages; (2) he may sue at law for damages for breach of the contract, or (3) he may treat the contract as rescinded, and sue at law to recover possession of the property leased.

In *Drummond* v. *Alphin,* 176 Ark. 1052, 4 S. W. (2d) 942, it was held that where an oil and gas lease, covering 27 scattered tracts of land, provided that in case operations were not commenced and prosecuted with due diligence within one year, the lease should be void, but that a forfeiture could be prevented by payment of quarterly rentals until drilling operations were commenced, after which no rent was to be paid, a drilling of two wells was not a compliance with the lessee's obligation to continue development of lands.

So it may be taken, as the well-settled rule in this State, that there is an implied covenant on the part of the lessee in oil and gas leases to proceed with reasonable diligence in the search for oil and gas, and also to continue the search with reasonable diligence, to the end that oil and gas may be produced in paying quantities throughout the whole of the leased premises.

It is true that the original lease provides for the payment of $3,000 in common stock of an operating oil company, controlled by the lessee, to be given to the lessors, but the principal consideration for the lease was the payment to the lessors of a part of the oil and gas produced on the leased premises. Where the payment of royalties is the principal consideration for the execution of the lease on the part of the lessors, it is evident that the parties contemplated that oil should be searched for and produced with reasonable diligence, to the end that both parties might be profited by the production of oil or gas in paying quantities. Because of the absence of an express provision as to the number of wells to be drilled,

it does not follow that this matter is subject alone to the will of the lessee. There is in every lease for the production of oil and gas, where the principal consideration is the payment of royalties, a condition, implied when not expressed, that, when the existence of either oil or gas in paying quantities is found from drilling wells on the leased premises, the lessee should drill such number of wells as in the exercise of sound judgment he may deem reasonably necessary to secure oil or gas for the mutual advantage of the lessor and the lessee. One of the principle reasons is that oil and gas are of a wandering and vagrant character, and this has been recognized by the courts, and oil and gas leases have been construed with reference to this well known characteristic. Hence it becomes necessary for the lessee to use reasonable diligence in exploring the leased premises for oil or gas, and to continue to do so after a well has been brought in, showing the existence of oil or gas in paying quantities, in order to carry into effect the purpose and object of the lease.

Of course, due deference should be given to the judgment of the lessee as operator to determine how many wells should be drilled, but he must use sound judgment in the matter, and cannot act arbitrarily. He must deal with the leased premises so as to promote the interest of both parties, and to protect their mutual interests. He must act for the mutual advantage, and proceed for both of them, and must not consider his own interest wholly, or for the most part. He must perform the contract so as to further the original purpose and intention of the parties.

In *White* v. *Green River Gas Co.*, 8 Fed. (2d Series) 261, the court held that two wells in five years on about 900 acres of land was not reasonable diligence. This case was relied upon, and cited with approval, in *Drummond* v. *Alphin, supra*. Many other illustrative cases are cited in the briefs, but we do not deem it necessary to cite them, or to review them in this opinion.

The lease under consideration embraced 1,170 acres of land. One well was brought in on section 11, which produced oil in paying quantities. The lessee claimed that, as long as this well produced oil in paying quantities, he was entitled to operate it without the payment of the additional rent provided in the lease, and without further drilling of additional wells. To so hold would enable it to speculate upon a lease which embraced a large block of land, and to relinquish operations at any time he saw fit to do so, without in any manner consulting the interest of the lessors. It is true that the drilling of oil wells is very costly, but the parties understood this when they executed the lease. The lessee only agreed to pay the lessors one-eighth of the oil produced as rent, and reserved seven-eighths of it for its own profit in drilling the well, and in undertaking the risk of not finding any oil. Then too, after drilling the first well, the lease continued in force for 5 years, and as long as oil was produced in paying quantities, without the lessee being required to pay any further rental. If the lessee wished to avoid the expense and risk of continued exploration for the discovery of oil or gas, it should have paid the additional rental provided by the lease and the supplemental contract.

Therefore, we are of the opinion that the court erred in holding that there was not an abandonment of operation upon the whole 1,170 acre tract by the lessee, and in not canceling the lease contract. In this connection, it may be stated that the appellants did not ask for a cancellation of that part of the contract relating to the well brought in in section 11, and now operated by the lessee, and the ten acres of land immediately surrounding it.

It is next contended that appellants are not entitled to proceed in equity to have the lease canceled, but that their remedy at law to recover damages is adequate. We do not think that contention is well taken. Here, again, we are confronted with the peculiar character of this kind of lease. When we consider the migratory character of oil and gas, and the fact that, if the lease should not

be canceled for noncompliance with its terms, there would be a cloud left upon the title of the lessors, and it would be extremely difficult for them to secure another lease on the land. It is not like the case where a specified rental is to be paid for a definite term, a subsequent lessee would know exactly where he stood, and the risk he ran in accepting a lease which had a definite period to run, and a fixed sum of money to be paid as rental. Here the original lease provided for its duration for a period of five years, and as long thereafter as oil or gas was produced in paying quantities. The consideration was a continuing one, to be paid only by the labor and expense of the lessee in the development of the property. The lessors had a continuing interest in the leased premises, and the lessee was not at liberty to do with the property as he pleased. He could not use, or fail to use, it to the prejudice of the lessors. It would be very difficult for the lessors, in cases like this, to establish and prove their injury in damages. The lessee was not required to develop the property against his will. He could quit at any time he saw fit to do so, and the lessors could not require specific performance on the part of the lessee, however solvent he might be.

It is true that the court, in *Blair* v. *Clear Creek Oil & Gas Co.*, 148 Ark. 301, 230 S. W. 286, 19 A. L. R. 430, in a suit by the lessors to cancel the lease on the ground that the lessee was drawing off the gas from the land through wells drilled on adjoining lands without drilling protection wells on the leased lands, held that a court of equity, having taken jurisdiction for the cancellation of the lease, might award damages to the lessors; but that is very far from holding that this was the only remedy the lessors had. Under the facts of that particular case, the remedy by damages was the only one that would avail the lessors anything. Part of the damages had already been incurred, and a decree cancelling the lease would not have given them an adequate remedy.

As held in *Millar* v. *Mauney,* 150 Ark. 161, 234 S. W. 498, the lessor might either sue for damages, or he might

'cancel the contract in equity, and recover the incidental damages, as was done in the Blair case. Here the lessors elected to proceed in equity to cancel the lease, as the remedy most effectual to protect their interest. This they had the right to do.

Finally, it is contended that the court should not have canceled the lease under the facts proved. We cannot agree with counsel in this contention. It is true, as claimed by them, that the lessors did commence, in 1923, to claim that the lease had been abandoned by the lessee, but it does not appear that this had the effect to prevent the lessee from continuing the exploring of the land for oil and gas. No suits of any character looking to that end were brought by the lessors. On the other hand, they were urging the lessee to proceed with diligence to the exploration of the remaining land for oil or gas. The lease was assignable, and the lessors did nothing to prevent the lessee from assigning the lease to any one. The lease comprised 1,170 acres of land, and oil wells were being brought in on lands in the same neighborhood. Only two wells were drilled upon the entire tract, and only one of them became a producing well. No other drilling operations were even commenced by the lessee. Under these circumstances, we think that the chancery court erred in not cancelling the lease for abandonment by the lessee. The question of abandonment or not is a mixed question of law and fact, and each case must depend upon its own particular facts and circumstances. The intention of the lessee cannot be gathered from any statement of his alone. It must be determined from his intention, as shown by his acts and conduct. When the illusory character of oil and gas is considered, when the danger of oil and gas being drained from the leased premises by wells being drilled on contiguous tracts of land, when the cost of installing drilling machinery is considered, and when all the customary expense incidental to drilling in oil fields are considered together, we are of the opinion that the chancellor erred in not cancelling the whole lease, as requested by appellants;

and for this error the decree must be reversed, and the cause remanded with directions to the chancery court to cancel the lease, except the 10-acre tract surrounding the well in section 11, and for further proceedings according to the principles of equity, and not inconsistent with this opinion.