## WOOD v. ARKANSAS FUEL OIL CO. et al.
### No. 203.

District Court, W. D. Arkansas,
El Dorado Division.

July 19, 1941.

Mahony & Yocum and J. S. Brooks, Jr., all of El Dorado, Ark., for plaintiff.

Moore, Burrow & Chowning, of Little Rock, Ark., for Arkansas Fuel Oil Co.

L. B. Smead, of Camden, Ark., for Ohio Oil Co.

MILLER, District Judge.

On May 1, 1920, the plaintiff, J. J. Wood, and wife, executed and delivered to Arkansas Natural Gas Company, a corporation, an oil and gas lease on the north half of the southwest quarter of Section 20, Township 18 South, Range 15 West, for a consideration of $3,200, and the payment to him of ⅛th part of the oil produced and saved upon the premises.

On March 25, 1921, the plaintiff and wife executed and delivered to M. B. Gill, an oil and gas lease on the east ¾ths of the southeast quarter of the southwest quarter of Section 20, Township 18 South, Range 15 West, for a cash consideration of $4,000 and the agreement on the part of the lessee to pay the lessor ⅛th part of all oil produced and saved from the leased premises.

On August 8, 1921, the plaintiff and wife executed and delivered to Transcontinental Oil Company, a corporation, an oil and gas lease on the east ¾ths of the northeast quarter of the northwest quarter, the west ¾ths of the northwest quarter of the northwest quarter, the east ⅞ths of the southwest quarter of the northwest quarter, and the southeast quarter of the northwest quarter of Section 29, Township 18 South, Range 15 West, for a consideration of $74,-250 and the payment to him by the lessee of ⅛th of the oil produced and saved upon the premises.

At the time of the execution of the leases the plaintiff was the owner in fee simple of the land and at all times since he has been and is now the owner and entitled to receive the full ⅛th royalty provided in each lease, and all other rentals or payments in favor of the lessor.

The defendants, Arkansas Fuel Oil Company and the Ohio Oil Company now hold jointly under separate assignments, each holding an undivided half interest of the leases in the land covered by the leases, except the M. B. Gill lease, in which the defendants only own and hold an undivided one-half interest each of the title, rights and interests of the original lessee, Gill, as to the east half of the southeast quarter of the southwest quarter of Section 20, Township 18 South, Range 15 West.

The original lessee, Arkansas Natural Gas Company, in the lease executed May 1, 1920, and those holding and claiming under it have drilled eight wells for oil and gas on the eighty acres of land covered by the lease.

The first well on this tract of land was completed July 31, 1921, and the last one, or well No. 8, was completed January 30, 1922. Well No. 5 on this tract was abandoned on January 1, 1925. Wells Nos. 4

and 7 are now producing. The others, 2, 3, 6 and 8 are shut down and not producing at this time.

The original lessee, M. B. Gill, in the lease dated March 25, 1921, and those holding and claiming under him, have drilled two wells on the twenty-acre tract involved in this suit. Well No. 1 was completed January 13, 1922, and abandoned April 23, 1924. Well No. 2 was completed January 30, 1922, and is now producing.

The original lessee, Transcontinental Oil Company, in the lease dated August 8, 1921, and those holding and claiming under it, have drilled nine wells for oil and gas on the 135 acres in the lease. Well No. 1 was completed October 25, 1921, and is now producing. The last well, No. 9, was completed February 14, 1922. Well No. 3 was shut down prior to April 1928. The other wells on this tract, being Nos. 2, 4, 5, 6, 7, 8 and 9, have been abandoned.

When a well is abandoned, the casing is pulled and all machinery and equipment pertaining to and used in connection with the well is removed. A well may be shut down, but not abandoned. When a well is shut down it means that it has ceased to produce, but the casing and machinery and equipment pertaining to and used in connection with the well has not been removed therefrom.

The leases are located in the original El Dorado field where the first oil well was brought in on January 10, 1921. The average daily production of the 204 wells in the original El Dorado field is 5.74 barrels per day. In 1934, the average production per well per day was about 9 barrels. Since 1934, 53 wells have been abandoned in the field.

The average daily production of the four wells on the leases now in controversy is about 20 barrels. In 1931 these four wells produced 6,366 barrels of oil; in 1932, 3,836 barrels of oil; in 1933, 3,588 barrels of oil; in 1934, 8,836 barrels of oil; in 1935, 8,056 barrels of oil; in 1936, 7,984 barrels of oil, and prior to August 31, 1937, they produced 5,040 barrels of oil.

The parties hereto have stipulated and agreed, that:

"Each of said leases has been properly and sufficiently drilled and developed in the Nacatosh sand, but there has not been any drilling or development below said sand.

"Prior to the commencement of this action the plaintiff made demand upon the defendants for surrender of the aforesaid leases, except as to an aggregate of forty acres comprised of ten acres surrounding each of the four wells then and now producing."

The complaint was filed August 23, 1937, in the Union Chancery Court, and in due time was removed to this court upon the petition of the defendant, Arkansas Fuel Oil Company.

The plaintiff alleges that the producing wells do not drain in excess of ten acres each, leaving the 195 acres abandoned by the defendants; that he has made demand of the defendants for the surrender and cancellation of the leases, other than ten acres per well, and that the defendants have refused to surrender and cancel the leases. The plaintiff also alleges that he has made demand of the defendants that if they would not surrender said leases to him, to drill the same to lower levels in search for oil and gas, but that defendants have failed to do so; that the leases are a cloud upon his title and that if the same be removed by the court that he can sell said leases or have the same drilled to deeper sands in search of oil and gas.

The defendants deny that the plaintiff has made demand that the leases be drilled to lower levels in search for oil and gas and allege that they have at all times performed every duty imposed upon them under the provisions of the leases.

The lease dated May 1, 1920, to Arkansas Natural Gas Company provides that in the event the lessee should drill and discover either oil or gas, the lease should be in full force and effect as long as oil or gas may be produced thereon in paying quantities.

The lease dated March 25, 1921, to M. B. Gill, provides that the lease shall remain in force for a term of five years and as long thereafter as oil or gas or either of them is produced from said land by the lessee.

The lease dated August 8, 1921, to Transcontinental Oil Company provides that in the event the lessee should drill and discover either oil or gas that the lease should be in full force and effect as long as oil or gas is produced in paying quantities.

The plaintiff introduced no testimony in support of the allegation that he had demanded of the defendants that they drill the leases to lower levels in search for oil or gas. As heretofore stated, this allega-

tion was specifically denied by each of the defendants.

Oil and gas in commercial quantities has been discovered in formations below the Nacatosh sand in Union County, Arkansas, and oil or gas, or both, may exist under the land involved herein in formations below the Nacatosh sand.

It is the contention of the plaintiff that the defendants have abandoned these leases, except as to the four wells still producing thereon and, excepting the area drained by said wells, which area is ten acres per well.

■ The law is well settled that there is an implied obligation on the part of the lessee to proceed with the search and also with the development of the land with reasonable diligence according to the usual course of such business, and that a failure to do so amounts, in effect, to an abandonment and works a forfeiture of the lease. Mansfield Gas Co. v. Alexander, 97 Ark. 167, 133 S.W. 837; Mansfield Gas Co. v. Parkhill, 114 Ark. 419, 169 S.W. 957; Millar v. Mauney, 150 Ark. 161, 234 S.W. 498; Ezzell v. Oil Associates, Inc., 180 Ark. 802, 22 S.W.2d 1015; Smith v. Moody, 192 Ark. 704, 94 S.W.2d 357.

■ These implied covenants or conditions also require the exploration and development of the entire lease and are continuing obligations upon the lessee and his assignees which are not satisfied by the development of a portion only of the leased property. Drummond v. Alphin, 176 Ark. 1052, 4 S.W.2d 942; Standard Oil Co. v. Giller, 183 Ark. 776, 38 S.W.2d 766; Smith v. Moody, supra.

It is admitted that the defendants have complied with the implied covenants and conditions of the leases with reference to the exploration and development of the leases to and in the Nacatosh sand. This sand is found in Union County, Arkansas, between depths of 2,125 feet and 2,200 feet. The Meakin sand is found at about 2,500 feet; the Gray sand at about 2,630 to 2,640 feet; the Blossum sand at about 2,750 feet and the Tokia sand at about 2,900 feet. The last four are known as the upper Cretaceous formations and have a greater porosity and permeability than the Nacatosh sand. Underlying these sands you may encounter the Travis Peak and other sands which are still more porous and permeable. The tendency being toward more porosity and permeability in the deeper sands.

In determining whether plaintiff is entitled to the relief sought, consideration must be given to the circumstances and conditions existing now and at the time the leases were executed. The question is what would be reasonably expected of an operator of ordinary prudence, having regard to the interest of both lessor and lessee.

■ The lessee cannot act arbitrarily. He must use sound judgment and must deal with the leased premises so as to promote the interest of both parties. He must perform the contract so as to further the original purpose and intention of the parties. Standard Oil Co. of Louisiana v. Giller, supra; Ezzell v. Oil Associates, supra; Sauder v. Mid-Continent Petroleum Corp., 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255, 93 A.L.R. 454; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801.

At the time the leases were executed the only oil-bearing sand that was known to exist in Union County was the Nacatosh sand, at a depth of from 2,100 to 2,200 feet. The parties evidently had this sand in mind at that time. Because of the nature of the sand, wells were spaced so that each well would theoretically drain ten acres, and in some instances less. Since that time improvements have been made in drilling machinery and it is possible to drill wells to a much greater depth. These modern depths were unknown and not in contemplation of the lessor and lessees at the time of the execution of the leases.

At the present time the Arkansas Oil and Gas Commission will permit one well on ten acres in all of the upper Cretaceous and Travis Peak formations which may be encountered as deep as 4,000 feet, but after that depth is passed, wells are spaced according to facts which are determined after a hearing before the Commission, and in some instances the Commission has only allowed one well on 160 acres of land. The Commission takes into consideration the permeability of the sand, porosity and pressure and other conditions in determining the spacing of wells drilled to the deeper formations. Caution must be exercised in drilling deep oil wells. The cost is very great and each well drilled must be protected with ample acreage. In other words, an orderly development program must be worked out in advance with the lessor and the operator, and the General Assembly of Arkansas, by the enactment of statutes, has provided machinery for the working out of these matters between the lessor and the

**46**

lessee. Pope's Digest of the Statutes of Arkansas, Sections 10461–10492.

The testimony of expert witnesses introduced by both parties, plaintiff and defendants, disclose that a prudent operator would not be justified in drilling wells to the deeper formations in the area of these leases without further information. The nearest well to these leases producing oil or gas from deeper formations is located a distance of five diagonal miles from the northeast corner. The next closest deep well lies to the west, a distance of something like twelve miles. There was a deeper well drilled about one mile from these leases, but the witness for plaintiff testified that it is folly to even consider that well as a commercial well of any sort.

Applying the reasonably prudent operator test to the facts in this case, I do not think the plaintiff is entitled to the relief asked. The leases are still producing and the plaintiff is receiving monthly payments therefrom. The testimony does not disclose that the defendants possess or have available any knowledge as to the existence of deeper formations capable of producing oil and gas in paying quantities which would justify a prudent operator in spending from fifty to one hundred thousand dollars in drilling a deep test well.

The plaintiff alleges that he could sell the lease on the 195 acres and have the deeper formations tested, but there is no proof that other operators are willing to drill these or any other leases in the vicinity thereof to deeper sands or formations. On the other hand, the testimony shows that a prudent operator would not be justified in attempting to make a deep test at this time.

Therefore, I hold that the defendants have not abandoned any of the leases and that they are entitled to continue to operate the same and to produce oil therefrom as long as they can do so in paying quantities. Under the facts and circumstances existing at the time the leases were executed and at present it would be inequitable to hold the implied covenants require the defendants to drill deeper wells as long as oil is being produced in paying quantities. A covenant should not be implied or created to satisfy the desires of the lessor and especially to meet a situation that was not in the minds of either the lessor or lessee at the time the lease was executed.

The production of oil from these and other leases is gradually diminishing, but in the absence of proof of facts which would justify a reasonably prudent operator to make additional tests, the defendants are entitled to retain possession of the leases.

If, in the opinion of the plaintiff, the wells are not producing oil in paying quantities, and if he is able to produce testimony to show that a reasonably prudent operator would be justified in making the expenditure of money necessary for a deep test, he may make demand on the defendants to do so, and in the event of the failure of the defendants to take such action, then the plaintiff will be at liberty to take such action as may be necessary to protect his interest.

Therefore, a decree dismissing plaintiff's complaint for want of equity, but without prejudice to his rights to take such further action as future developments may justify, will be entered. All costs to be paid by plaintiff.