NOLAN *v.* THOMAS.

5-1428                                                    309 S. W. 2d 727

Opinion delivered January 27, 1958.

[Rehearing denied March 3, 1958]

*Crumpler & O'Connor* and *Keith, Clegg & Eckert,* for appellant.

*Jack Machen,* for appellee.

ED. F. McFADDIN, Associate Justice.   In the Trial Court the appellees were plaintiffs and the appellants were defendants; and for convenience we will refer to the parties by trial court designation.

The plaintiffs brought this suit to cancel oil and gas leases and assignments, insofar as the same affected 120 acres of a tract of 160 acres. The reason for cancellation was the defendants' failure to fulfill the implied covenant to develop the premises for oil and gas. At the conclusion of the plaintiffs' case, the defendants invoked Act No. 470 of 1949 (§ 27-1729 Ark. Stats., as amended), and filed their written motion to dismiss the complaint, i. c., they claimed that the plaintiffs had not established a case for the relief sought. The Trial Court denied the motion to dismiss, and then granted the plaintiffs their desired relief when the defendants elected to stand on the motion to dismiss. The defendants have appealed.

I. *The Rule Announced In Werbe* v. *Holt.* At the outset, it is proper to mention the rule for testing defendants' motion to dismiss. In *Werbe* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225, we discussed the history and applicability of Act No. 470 of 1949, which is now § 27-1729 Ark. Stats., as amended. We said: "By the overwhelming weight of authority, it is the Trial Court's duty, in passing upon either a demurrer to the evidence or a motion for judgment in law cases tried without a jury, to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if his evidence, when so considered, fails to make a *prima facie* case". So, the question before us is whether the Chancellor was correct when, after giving the plaintiffs' evidence its strongest probative force, he held that a case was made so as to require the defendants to offer their proof.

II. *The Plaintiffs' Claim for Cancellation.* The opinion of the learned Chancellor is in the record, and it briefly and succinctly states the case. We copy the opinion in full:

"This cause was filed by Plaintiffs against Defendants, seeking cancellation of an Oil and Gas Lease, which was executed in March, 1944 for a period of ten (10) years, covering the SE¼ of Section 6, Township 16 South, Range 19 West, Columbia County, Arkansas.

The Lease has the usual provision for the payment of delay rentals to be paid for the deferment of drilling from year to year.

"When the lease was about to expire by its own terms, *viz*, ten years from date of execution, a well was drilled in the Northwest corner of said 160 acre tract. This well has produced and is still producing a small amount of oil. It was completed about the 20th of February, 1954, and has produced from 10 to 20-some barrels of oil per day during this time. No other wells have been drilled on the 160 acre tract.

"Some time in the early part of November, 1954, Lessors wrote Lessees requesting that another well or wells be drilled on this tract seeking further exploration, and from that time until May 1956, some 5 or 6 letters were written, and all of which were answered, and which letters have been introduced, without objection in this case. From the tenor of these answers, it appears that lessees (defendants) do not intend to drill any other wells or make further exploration on this tract of land, notwithstanding they have had the lease for 13 years and have drilled only one well, and it is still producing oil.

"The Court feels that Lessees owed Lessors a duty to further develop the leased premises, and that Lessees have had more than three (3) years since the well, which is now producing, was brought in.

"It is true that Lessors do not know whether in fact oil and/or gas can be produced from the remaining acreage, but it is also true that they cannot find out so long as Lessees keep the lease and refuse to make further exploration thereon.

"The Court believes the law to be, and the principles of equity to be: 'The production of oil on a small portion of the leased tract cannot justify the Lessee's holding the balance indefinitely and depriving the Lessor not only of the expected royalty from production pursuant to the lease, but of the privilege of mak-

ing some other arrangement for availing himself of the mineral content of the lands[1].'

"The Court therefore feels that the Petition for cancellation of the Lease, insofar as affects the South Half SE¼ and the Northeast Quarter of said SE¼, should be granted."

Defendants argued below, and urge here: (a) that the plaintiffs had the burden of proving that a prudent operator would have drilled other wells in addition to the one that was drilled; and (b) that the plaintiffs failed to offer such proof. We hold that the plaintiffs made a *prima facie* case requiring the defendants to go forward and offer their proof on the prudent operator matter when the plaintiffs showed these facts: (1) that the leases here involved were executed in 1944 and allowed delay rentals to be paid each year for ten (10) years; (2) that the delay rentals were paid and no drilling was undertaken on the lease until 1954, when one well was drilled and was a small producer; (3) that the plaintiffs then insisted for more than two years that the defendants should drill other wells; (4) that the defendants consistently refused[2] to drill other wells; and (5) that the plaintiffs are not asking that the lease be cancelled on the 40 acres on which there is a producing well, but are asking for cancellation only on the other three 40-acre tracts.

---

[1] The quoted statement in the Trial Court's opinion is from the U. S. Supreme Court's opinion in *Sauder* v. *Mid-Continent*, 292 U. S. 272, 78 L. Ed. 1255, 54 S. Ct. 671, 93 A. L. R. 454.

[2] As evidence of defendants' attitude against drilling other wells, we give excerpts from some of the letters written by defendants to plaintiffs: From defendants' letter of July 19, 1954: "It is hardly worth while to drill a well 3,500 feet at a cost of approximately $25,-000.00 to the company when you only make a 17 barrel a day well. We are not planning to drill another well on the Thomas in the near future." From defendants' letter of February 26, 1955: "I would say that a great deal of additional study will have to be given to drilling any further shallow wells, because of the unfavorable results so far." From defendants' letter of July 18, 1956: "Regardless of what some other people might have thought of drilling some of the shallow wells, competent people have been consulting with us and have decided that this would not be a profitable undertaking for anyone, and there is no point in additional wells being drilled and plugged on the property because it would just condemn it that much more."

To support their argument, appellants cite, *inter alia,* a few sentences from *Winn* v. *Collins,* 207 Ark. 946, 183 S. W. 2d 593, about a "prudent operator". The facts in that case are entirely dissimilar from those in the case at bar. That case involved a fixed mineral (bauxite) and not a transitory mineral like oil or gas. Furthermore, the exploration in that case was in the first year of the lease, whereas, in the case at bar, twelve years after the date of the original lease and more than two years after the discovery well, the defendants were still refusing to develop the three 40-acre tracts here involved. The question is not only whether the plaintiffs in the case at bar had to show that a prudent operator would drill on the other three 40-acre tracts here involved; but the question is also whether the defendants should be allowed to prevail on a policy of refusing to drill and at the same time holding the lease on the undeveloped three 40-acre tracts, thereby preventing the plaintiffs from having the privilege of obtaining other persons who might drill on these three 40-acre tracts. Some of our cases point to the correctness of the Chancellor's opinion.

In *Drummond* v. *Alphin,* 176 Ark. 1052, 4 S. W. 2d 942, the facts showed that in 1919 Alphin executed a lease to Felsenthal on 1710 acres; that in 1923 two wells were drilled as producers on some of the land, but there was no development on any of the other lands; and in August 1926 suit was brought to cancel the leases on all of the undeveloped lands. The opinion recites: "It is true, as appellants assert, that the complaint does not allege that there is a drainage of oil from under these (other) lands by wells which have been drilled by other persons, but it is true also that, unless appellants explore for oil, the lands may remain undeveloped as long as the lease is outstanding." Under those facts, this Court, after citing many cases, held: "The majority are of the opinion, upon the authority of the cases previously cited herein, that the appellants have failed, beyond a reasonable time, to begin the work of exploration and development as provided in the original leases, after drilling the discovery wells, and that the cancellation

of such portions of the original leases as had not been explored, was properly decreed."

In *Ezzell* v. *Oil Associates,* 180 Ark. 802, 22 S. W. 2d 1015, we said: "So it may be taken, as the well settled rule in this State, that there is an implied covenant on the part of the lessee in oil and gas leases to proceed with reasonable diligence in the search for oil and gas, and also to continue the search with reasonable diligence, to the end that oil and gas may be produced in paying quantities throughout the whole of the leased premises."

In *Standard Oil Co.* v. *Giller,* 183 Ark. 776, 38 S. W. 2d 766, in cancelling a lease on the undeveloped portion of the premises, we quoted from an earlier case: " 'Of course, due deference should be given to the judgment of the lessee as operator to determine how many wells should be drilled, but he must use sound judgment in the matter and cannot act arbitrarily. He must deal with the leased premises so as to promote the interest of both parties and to protect their mutual interests; he must act for the mutual advantage and proceed for both of them, and must not consider his own interest wholly or for the most part; he must perform the contract so as to further the original purpose and intention of the parties.' "

In *Smith* v. *Moody,* 192 Ark. 704, 94 S. W. 2d 357, the lease covered 360 acres of land. Four wells were drilled on one 40-acre tract and the lessee refused to develop any further. The Chancellor cancelled the lease except as to the 40 acres on which the wells had been drilled. This Court a f f i r m e d the decree, saying: "Much testimony was offered as to the necessity of drilling other wells, the contention being that the wells now producing were at the edge of the producing fields, and that new wells could not be drilled and operated except at great loss. *This contention may be disposed of by saying that, if true, the lessees have not been damaged by the cancellation of so much of the contract of lease as cannot be. profitably performed.* (Italics our own.)

In his opinion the Chancellor quoted from the holding of the U. S. Supreme Court in *Sauder* v. *Mid-Continent,* 292 U. S. 272, 78 L. Ed. 1255, 54 S. Ct. 671, 93 A. L. R. 454; and we adopt as our own the said quotation[3]: "The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor, not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the lands."

Affirmed.

[3] There is an annotation on the point in 94 A. L. R. 460. See also 24 Am. Jur. page 569.