SKELLY OIL Co. *v.* SCOGGINS.

5-1962                                    **329 S. W. 2d 424**

Opinion delivered December 7, 1959.

*C. E. Blodget, Smith & Sanderson,* for appellant.
*Bert B. Larey,* for appellee.

SAM ROBINSON, Associate Justice. This is a suit to cancel an oil and gas lease. In April, 1943, Winnie Smith executed an oil and gas lease on 360 acres. Subsequently in the same year, appellant, Skelly Oil Company, succeeded to the rights of the lessee. In 1945 Skelly drilled two producing wells on one 40 acre tract of the property. In 1945 a dry hole was drilled on another 40 acre tract. In 1953 Skelly drilled two more holes on the same 40 acre tract where the two producing wells had been developed in 1945 and at the instance of royalty owners cancelled the lease on the 40 acres where a dry hole had been put down in 1945. In the meantime Winnie Smith died and her heirs sought to prevail on Skelly to put down other wells on the property. In response to the demands of the heirs that the property be further developed, Skelly drilled the two wells in 1953 on property where producing wells had been developed in 1945, but refused to drill on the 280 acres. The Smith heirs then leased the 280 acres to Monroe Scoggins under an agreement that he would at his own expense take whatever steps were necessary to set aside the lease to Skelly and when this was done he would immediately drill for oil on the 280 acres. Scoggins and the Smith heirs then filed this suit to cancel the Skelly lease on the 280 acres. The chancellor entered a decree cancelling the lease on the 280 acres and Skelly has appealed.

In *Ezzell* v. *Oil Associates, Inc.*, 180 Ark. 802, 22 S. W. 2d 1015, this Court said: ''So it may be taken, as the well-settled rule in this State, that there is an implied covenant on the part of the lessee in oil and gas leases to proceed with a reasonable diligence in the search for oil and gas, and also to continue the search with reasonable diligence, to the end that oil and gas may be produced in paying quantities throughout the whole of the leased premises.'' This rule is sustained by the cases of *Nolan* v. *Thomas*, 228 Ark. 572, 309 S. W. 2d 727; *Drummond* v. *Alphin*, 176 Ark. 1052, 4 S. W. 2d 942; *Standard Oil Co.* v. *Giller*, 183 Ark. 776, 38 S. W. 2d 766.

The question in the case at bar is, did the lessee proceed with reasonable diligence in the search for oil

and gas and also to continue the search with reasonable diligence throughout the whole of the leased premises. The chancellor held that the oil company did not proceed with such diligence and we cannot say the chancellor's finding is against the preponderance of the evidence.

The original lease was executed in 1943 and although producing wells have been developed on one 40 acre tract and a dry hole was drilled on another 40 acre tract, no well has been drilled on the 280 acres on which the chancellor ordered the lease cancelled. Skelly contends that the geological structure underlying the 280 acres does not justify spending the amount of money required to drill a well thereon and therefore no well has been drilled on the 280 acres.

In *Smith* v. *Moody*, 192 Ark. 704, 94 S. W. 2d 357, the lease covered 360 acres of land. Four wells were drilled on one 40 acre tract and the lessee refused to develop any further. The chancellor cancelled the lease except as to the 40 acres on which the wells were drilled. This Court affirmed the decree, saying: ''Much testimony was offered as to the necessity of drilling other wells, the contention being that the wells now producing were at the edge of the producing fields, and that new wells could not be drilled and operated except at great loss. [This is the same contention Skelly makes in the case at bar.] This contention may be disposed of by saying that, if true, the lessees have not been damaged by the cancellation of so much of the contract of lease as cannot be profitably performed.'' In *Sauder* v. *Mid-Continent Petroleum Corp.*, 292 U. S. 272, 78 L. Ed. 1255, 54 S. Ct. 671, 93 A. L. R. 454, the United States Supreme Court said: ''The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral contents of the land.''

Up to the time of the filing of this suit in January, 1956, 13 years after obtaining the lease, Skelly had evinced no intention of drilling on the 280 acres. Now Skelly says that if given the opportunity it would drill, but this offer comes only after Scoggins has been to the expense of retaining lawyers and filing suit. Appellant also contends that even if it breached the implied covenant to properly develop the property, the lessors made no formal demand that wells be drilled on the 280 acres and that the lessors waived their right to insist on such wells being drilled. The evidence shows that over a long period of time the lessors attempted to get Skelly to drill on the property in question and the lessors did nothing to waive their rights in that respect.

Affirmed.