REYNOLDS v. SMITH.

5-2002             331 S. W. 2d 112

Opinion delivered January 25, 1960.

*Homer T. Rogers, Wright, Harrison, Lindsey & Upton,* for appellant.

*Tompkins, McKenzie & McRae,* for appellee.

J. SEABORN HOLT, Associate Justice. This is an action in which appellants sought to cancel a portion (120 acres only) of an oil and gas lease covering 200 acres of land, consisting of five contiguous 40-acre tracts. The lease was executed in March 1953, for the primary term of six months and as long thereafter as oil and gas is produced, and contained a special drilling provision that the lessee would, within thirty days, drill a well to a depth of 3,500 feet unless production in commercial quantities was found at a lesser depth. The lessee complied with this drilling provision and obtained production in the Travis Peak formation in the first well drilled at a depth of approximately 3,000 feet. This well proved to be the discovery well in this formation in the area. Jones-O'Brien, appellee Smith's predecessor, had drilled seven wells upon this leased land and had contributed to the cost of drilling a test well on the adjoining lands to the north, which proved to be dry. These wells were all drilled to the Travis Peak formation, the deepest known horizon in the area and through October 1, 1958, the lessee had expended $239,623.97 in drilling and completing these wells, plus operating expenses of $130,024.95, making a total of $369,648.92 on the leased premises. Three of these wells are now producing commercially from the Travis Peak. The Reynolds family, appellants, own practically all of the royalty under the leased premises and have received $41,429.41 in royalties. Appellant, J. D. Reynolds, wrote three letters to Jones-O'Brien; the first on March 13, 1956, the second October 4, 1956 and the third on December 3, 1957, requesting a release of the

non-producing acreage included in the lease. None of these letters contained a request or demand for additional drilling. It is undisputed that there is no production deeper than the Travis Peak in Nevada County, and the nearest deeper production is from the Smackover Lime at Stephens, Arkansas, nine miles southeast of the lands involved, and in the Midway field of Lafayette County which is sixteen miles southwest of the lands involved. A large number of dry Smackover Lime wells have been drilled in Nevada County, one immediately adjacent to the lands involved, and the testimony is in agreement that the drilling of such a well upon the leased premises would be a wildcat operation; that the drilling of such a well through testing point to the Smackover Lime would cost from $40,000.00 to $70,000.00, and to warrant drilling, 500 acres of land, as a minimum, would be required.

Appellants brought the present suit December 16, 1958, in which they sought to cancel the lease in question as to all the lands included therein except the 80 acres on which the three producing wells are located, alleging that appellees ''— have failed to comply with the implied covenants of said oil and gas lease, have drilled and completed all the wells they intend to drill and complete on said land and merely would like to hold the same to speculate on same and should be required to release all portions of this lease except —'' the 80 acres. When the case was tried below, the appellants conceded that the entire 200 acres included in the lease had been fully and adequately developed as to all known producing horizons in the area which includes formations through the Travis Peak. No drainage or offset obligations are involved.

Trial resulted in a decree in favor of appellees and this appeal followed. On this appeal, appellants argue that the lease should be cancelled as to all levels, all formations under the three 40-acre tracts below the Travis Peak (3,500 foot level) in which there is no present production, and rely on the following points for reversal: ''(1) The appellees have breached their covenant to

explore and develop the premises (2) The deeper horizons constitute separate estates that have never vested in the appellees (3) The appellees are holding the deep rights for purposes of speculation.''

After reviewing the testimony presented in this record, we think the preponderance of the evidence supports the chancellor's findings of facts and conclusions of law which contains these recitals: ''This lawsuit poses the interesting and somewhat new question as to whether or not defendant, Guy Smith, as the present owner and operator of this lease, by reason of a somewhat stripper operation on one 80 acres only is justified in continuing to hold the remainder of the leased premise longer without definite plans to test the deeper strata under the lease which has favorable possibilities.

''This exact question has not been passed upon by the Arkansas Supreme Court, but previous opinions of that Court do assist in answering it. In *Poindexter* v. *Lion Oil Refining Co.*, 205 Ark. 978 (at page 984), the Court . . . stated: 'So it may be taken, as the well settled rule in this State, that there is an implied covenant on the part of the lessee in all oil and gas leases to proceed with reasonable diligence in the search for oil and gas, and also to continue the search with reasonable diligence, to the end that oil and gas may be produced in paying quantities throughout the whole of the leased premises.' . . .

''The implied covenants or conditions also require the exploration and development of the entire lease and are continuing obligations upon the lessee and his assignees which are not satisfied by the development of a portion only of the leased property. . . .

''In the recent case of *Nolan* v. *Thomas,* opinion delivered on January 22, 1958, 228 Ark. 572, 309 S. W. 2d 727, the Arkansas Supreme Court stated the law to be, and the principles of equity to be, as . . . follows: 'The production of oil and gas on a small portion of the leased tract cannot justify the lessees in holding the balance indefinitely and depriving the lessor not only of the

expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land.'

"It is admitted that the defendant, Guy Smith, and his assignors, have complied with the implied covenants and conditions of the lease with reference to the exploration and development of the leases to and in the Travis Peak formation. Underlying the Travis Peak you may encounter production from the Smackover lime formation.

"As applied to the type of case at bar, the law may be stated to be that the production of oil on a small portion of the leased premises from shallow horizons, even though the lease is fully developed as to such sands, cannot justify the lessee in holding the balance of the nonproducing acreage indefinitely and depriving the lessors of any possible royalty from production pursuant to the lease at greater depths, and of the privilege of making some other arrangement for availing themselves of the mineral content, if any, of the land at lower levels.

"In determining whether plaintiffs here are entitled to relief sought, consideration must be given to the circumstances and conditions existing now and at the time the lease was executed. The question is what would be reasonably expected of an operator of ordinary prudence, having regard to the interest of both lessors and lessees. The lessees cannot act arbitrarily. They must use sound judgment and must deal with the leased premises (in regards to the deeper formations and in all other respects) so as to promote the interests of both parties.

". . . Each case of this kind, therefore, has to be decided on its particular facts. The question here then is for the most part one of fact. Has the failure to date of Jones-O'Brien, Inc. and/or Guy Smith to test the deeper strata been such a breach of the implied covenant to develop as to entitle plaintiffs under the law to a cancellation of the lease? Or, to pose the question another way, is defendant, Guy Smith, as the owner and

operator of this lease justified, under the circumstances here, in continuing to hold the same, except for the 80 acres?

"At the time this lease was executed the parties were thinking of production at or above 3,500 feet. The drilling contract which is a part of the lease so shows. The parties evidently had the Travis Peak formation in mind at that time. Since that time information has been obtained which indicates that this lease may produce oil in paying quantities from greater depth. However, caution must be exercised in drilling deep oil wells. The cost is very great and each well drilled must be protected with ample acreage. The testimony of witnesses introduced by both parties agree that a prudent operator would not be justified in drilling wells to deeper formations in the area of this lease without ample acreage to protect him. It would be folly for the defendant, Guy Smith, (or for plaintiffs, for that matter, if the lease is returned to them) to even consider drilling a deep test on one of these three forties alone, without other sufficient acreage to protect such an operation. No new lessee could be found by the lessors who would do that.

". . . Ample acreage would be necessary to justify a prudent operator in spending a large sum of money in drilling a deep test well. The evidence does not disclose that the defendant Guy Smith, or his assignors, have in any way, as yet, failed to cooperate in such an effort or have delayed, hindered or prevented the formation of such a block necessary for a deep test.

"The plaintiffs allege that they could sell the lease on the 120 acres in question, and have the deeper formations tested, but there is no proof that other operators are willing to drill this or other leases in the vicinity thereof to deeper sands or formations without a large block of acreage. On the other hand, the testimony is undisputed that a prudent operator would not be justified in attempting to make a deep test at this time on this 120 acres alone.

"Therefore, the Court holds that defendants have not abandoned any of the tracts up to this time. The pro-

duction of oil from this lease is gradually diminishing, but in the absence of proof of facts that would justify a reasonably prudent operator to make additional tests on this particular lease in the deeper strata, the defendant, Guy Smith, is entitled to retain possession of the lease *in toto*.

"If at any time in the future, in the opinion of the plaintiffs, the wells are not producing oil in paying quantities, or if they are able to produce testimony to show that a reasonably prudent operator would be justified in making the expenditure of money necessary for a deep test, plaintiffs may make demand on the defendants to do so, and in the event of the failure of the defendants to take such action, then the plaintiffs will be at liberty to take such action as may be necessary to protect their interest.

"Therefore, a decree dismissing plaintiffs' complaint for want of equity will be entered, but without prejudice to their rights to take such further action as future developments may justify."

In *Saulsberry* v. *Siegel*, 221 Ark. 152, 252 S. W. 2d 834, where the facts were similar, in effect, we said: "It is settled that the lessee: must act for the mutual advantage of both the lessor and lessee; must perform the contract so as to further the original purpose and intention of the parties; must use sound judgment in the matter and cannot act arbitrarily. Whether the lessee has acted in such manner is to be determined from all the facts and circumstances in the case. Here, after considering such facts and circumstances, the chancellor found in favor of the lessee; and we cannot say the decree is contrary to the preponderance of the evidence."

The primary and decisive question, therefore, is: did the lessee here exercise that degree of prudence as an operator reasonably expected of him in the circumstances? We hold that he had done so to date of trial. *Wood* v. *Arkansas Fuel Oil Co.*, 40 F. Supp. 42 (1941).

In affirming this decree, we do so without prejudicing appellants' right to take further action as future developments might justify.

Affirmed.