Joseph Ewell BYRD et al *v.*
Rubye R. BRADHAM et al

83-149                                                   655 S.W.2d 366

Supreme Court of Arkansas
Opinion delivered June 27, 1983
[Rehearing denied September 12, 1983.]

*Anderson, Crumpler & Bell, P.A.,* for appellants.

*Keith, Clegg & Eckert,* for appellees.

DARRELL HICKMAN, Justice. This is an oil and gas lease case and the question is whether a lease should be cancelled because of a violation of an implied covenant to develop the leasehold interest for production of oil or gas. The chancellor found that the lessors had failed to prove a violation of the implied covenant and refused cancellation of the lease. We disagree and reverse.

The lease in question was executed in 1952 and concerns 80 acres of land in Columbia County, Arkansas. For 28 years the lessees, who are the appellees in this case, failed to take any action to develop 75 acres of the leasehold. The lease was for a primary term of ten years, and in 1958 a well was drilled just west of the leasehold estate. Five of the 80 acres in

question were included in a unitization agreement for the purpose of drilling that well. Those five acres are not in dispute but the appellants seek to set aside the lease on the remaining 75 acres. The only evidence of any activity on the part of the appellees during this 28 year period was testimony by Rubye R. Bradham, one of the appellees, who said in 1962 she had a geologist look at her oil and gas interests to determine the potential profitability of drilling. She said she was "reasonably sure" that he looked at the leasehold in dispute. She said he did not recommend drilling anywhere that he had inspected.

This is the only evidence that the appellees took any action regarding the leasehold until the spring of 1981. In April, Joseph Byrd, one of the appellants, wrote Bradham a letter asking her to release the 75 acres. About this time Bradham contacted a drilling contractor about bidding on some wells on her land which included a well on the 75 acres in question. She said she contacted the drilling contractor before she ever received the letter from Byrd. But the drilling contractor could not definitely confirm that. A company named Samson Resources had tried to buy Bradham's interest to the lease in November, 1980. They also contacted Byrd and offered him a greater royalty interest than he would receive under the lease in question. Byrd said that he talked to Mrs. Bradham casually in 1976 about drilling the land and believed that the conversation was a request on his part for Bradham to develop the property. Mrs. Bradham said she did not take it as such but thought he was merely inquiring about the 75 acres. As it turns out, Byrd did not know that the 75 acres was still under the control of Bradham through the production of the well on the adjacent property, although Bradham was aware of it.

In oil and gas leases where royalties constitute the chief consideration, an implied covenant exists that the lessee will explore and develop the property with reasonable diligence. *Smart* v. *Crow*, 220 Ark. 141, 246 S.W.2d 432 (1952). The duty to explore extends to the entire tract, and this is especially true where paying quantities of oil have been found on a part of the tract. *Standard Oil Co. of Louisiana* v. *Giller*, 183 Ark. 776, 38 S.W.2d 766 (1931).

Of course, due deference must be given to the judgment of the lessee in determining whether to drill, but the lessee must not act arbitrarily. *Ezzell* v. *Oil Associates, Inc.*, 180 Ark. 802, 22 S.W.2d 1015 (1930); *Smart* v. *Crow, supra.* Furthermore, the lessee must act not only for his own benefit but also for the benefit of the lessor. *Amoco Production Co.* v. *Ware*, 269 Ark. 313, 602 S.W.2d 620 (1980). The lessee's obligation to explore is a continuing one, even after paying quantities of oil are discovered, in order to effect the purpose of the lease. *Ezzell, supra.* Production on only a small portion of the leased land does not justify allowing the lessees to hold the entire leasehold indefinitely, thus depriving the lessor of receiving royalties from another arrangement. *Nolan* v. *Thomas,* 228 Ark. 572, 309 S.W.2d 727 (1958).

Mrs. Bradham and the other lessees in this case have not been diligent enough in performing their duty under the implied covenant to develop the lease. Appellants, in effect, are receiving absolutely no consideration for their lease of the 75 acres. While Mrs. Bradham did take some steps to drill on the leasehold in 1981, we are satisfied that she did this only when she saw that the lessors were insistent upon some kind of action.

Mrs. Bradham's position was two-fold. First of all she contended she was under no obligation to develop this land because it would require a "wildcat" well, in other words it would be a pure gamble. Next, she argues that she was just about to drill a well when suit was filed. As to her first argument, if there is nothing for her to gain, then she has lost nothing by cancellation of the lease. *See Skelly Oil Co.* v. *Scoggins*, 231 Ark. 357, 329 S.W.2d 424 (1959). As to her second argument, twenty-eight years is too long to do nothing towards performance of her duty under the lease.

It is suggested that demand for performance of the implied covenant must be made before cancellation of a lease will be ordered. That might ordinarily be true but demand is not always necessary and was not required in this case. In *Mansfield Gas Co.* v. *Parkhill,* 114 Ark. 419, 169 S.W. 957 (1930), no demand was made or required because we

found that there was total inactivity by the lessee for 10 years, which was an unreasonable length of time under those facts. We find here, too, that there was inactivity for an un-reasonable length of time. Therefore, the lease should be cancelled as to the seventy-five acres in dispute.

Reversed.