ENSTAR CORPORATION, et al. *v.* CRYSTAL OIL
COMPANY, et al.

87-170                                     740 S.W.2d 630

Supreme Court of Arkansas
Opinion delivered December 7, 1987

*Keith, Clegg & Eckert*, for appellant.

*Crumpler, O'Conner & Wynne*, for appellee.

TOM GLAZE, Justice. Appellants claim ownership of an oil and gas leasehold estate that is in Columbia County, Arkansas, and, in pertinent part to the case here, includes lands described within the SE¼ of Section 10, Township 18 South, Range 22 West. This estate was the result of three leases acquired by appellants in the mid-to-late 1930's. Appellants brought this action to confirm and quiet title in their leasehold estate, seeking to cancel leases that their lessors entered into with appellee, Crystal Oil Company, in 1974. Appellants also sought to recover the value of all minerals that Crystal Oil had extracted from the appellants' leasehold estate and to enjoin it from any further extraction of oil, gas and associated hydrocarbons from the estate.

Appellants drilled four wells on the 241 acres covered by their three leases; three wells were located in the SE¼ of Section 10, and one was located in the N½ of Section 15. In 1949, appellants contributed three of the four wells to the Dorcheat Field Unit, which was intended to repressure the Smackover

Limestone Formation. While the Dorcheat Unit has produced continuously since 1943, none of appellants' previously mentioned four wells has produced petroleum hydrocarbons since December 1952.

The Crystal Oil leases covered land located in the N½ of the SE¼ of Section 10. That land was included within appellants' described leasehold estate, but is outside the Dorcheat Unit. Appellants previously had drilled only one well, the Sayers Unit No. 1, on this N½ tract, an eighty-acre tract situated in the Cotton Valley Formations. The well was commenced in April 1944, but formally ceased production in August 1952. Appellants claimed, by argument, that the N½ tract had been voluntarily unitized after the Dorcheat Unit was effective in 1943. In 1976, Crystal Oil drilled the Sayers No. 1 well in the NW¼ of the SE¼, and, in 1978, it drilled the Sayers No. 2 well, located in the NE¼ of the SE¼. Both wells produced, and continue to produce, commercial quantities, and they are the primary objects of appellants' suit.

The trial judge determined that, for twenty-four years, the appellants had not worked their oil well located in the N½ of the SE¼ and had since abandoned it. He found further that the proof reflected that a prudent operator would have drilled the well, and in fact, that was what happened—Crystal Oil having successfully done so beginning in 1976. In view of these and other findings, the judge cancelled the appellants' leases covering the N½ of the SE¼ of Section 10 on which Crystal Oil's two wells are located. In cancelling the leases, the judge concluded the appellants had breached the implied covenant of the lease to develop the owner-lessors' N½ tract; he further held that because of appellants' delay in challenging Crystal Oil's interest in the N½ tract, the appellants' present action was barred by the doctrine of laches. We affirm.

The primary question here is the same as that posed in *Byrd* v. *Bradham*, 280 Ark. 11, 655 S.W.2d 366 (1983) and *Stevenson* v. *Barnes*, 288 Ark. 147, 702 S.W.2d 787 (1986): Whether a lease should be cancelled because of the lessee's violation of an implied covenant to develop the leasehold for the production of oil and gas.

In *Byrd*, the court related the settled law on the

subject as follows:

> *In oil and gas leases where royalties constitute the chief consideration, an implied covenant exists that the lessee will explore and develop the property with reasonable diligence.* (Citation omitted.) The duty to explore extends to the entire tract, and this is especially true where paying quantities of oil have been found on a part of the tract. (Citation omitted.)

> *Of course, due deference must be given to the judgment of the lessee in determining whether to drill, but the lessee must not act arbitrarily.* (Citation omitted.) Furthermore, the lessee must act not only for his own benefit but also for the benefit of the lessor. (Citation omitted.) *The lessee's obligation to explore is a continuing one, even after paying quantities of oil are discovered, in order to effect the purpose of the lease.* (Citation omitted.) Production on only a small portion of the leased land does not justify allowing the lessees to hold the entire leasehold indefinitely, thus depriving the lessor of receiving royalties from another arrangement. (Citation omitted.) (Emphasis supplied.)

280 Ark. at 13-14; 655 S.W.2d at 367 (1983).

In applying the foregoing principles, a two-fold question arises concerning whether the appellants exercised sound judgment or whether they acted in an arbitrary manner, when choosing not to drill for oil on the leasehold, N½ tract. *Cf. Saulsberry v. Siegel*, 221 Ark. 152, 252 S.W.2d 834 (1952). Upon conflicting testimony of the numerous witnesses offered by the parties, the trial judge, in his excellent and concise memorandum opinion, stressed that evidence offered by Crystal Oil witnesses, who revealed that they had studied appellants' own well logs and decided that a prudent operator would have drilled in the Cotton Valley zones. The credibility given Crystal Oil's witnesses on this point obviously was enhanced somewhat by the fact that the witnesses' recommendations to drill in the Cotton Valley (N½ tract) proved correct, as evidenced by Crystal Oil's two producing wells. This point, we should add, is a major difference from *Saulsberry*, 221 Ark. 152, 252 S.W.2d 834, which appellants argue controls here. In *Saulsberry*, Siegel and

others were the owners of a 1922 oil and gas lease under which they drilled some five wells, all but one of which proved unproductive. Those wells were drilled to the Nacatoch sand. Siegel failed to drill any more wells on the leasehold after 1930 until Saulsberry, pursuant to a top lease, drilled and produced oil below the Nacatoch sand. The court pointed out that the record failed to reveal why, or under what theory, Saulsberry decided to drill for the oil; on the other hand, the evidence otherwise tended to support Siegel's and his associates' decision not to drill. Here, of course, the information upon which Crystal Oil decided to drill was the appellants' well logs—which appellants had earlier studied and discounted when deciding to abandon further drilling. Based upon such evidence, the trial judge clearly was justified in concluding the appellants failed to explore and develop the property with reasonable diligence.

Before leaving this point, we note appellants' argument that, because the price of oil was so low during the period between 1952 and 1974, a prudent operator would not have been justified in re-drilling in the Cotton Valley Formation. Even accepting the validity of appellants' evidence and argument, we would simply point out that Crystal Oil commenced its drilling in 1976, and appellants had evidenced no plans to commence drilling in 1974 or afterwards. The appellants delayed even in bringing this action against Crystal Oil until 1981, which was seven years after Crystal Oil executed its first oil and gas lease and five years after Crystal Oil drilled and completed its first well. In sum, we believe the facts and circumstances in this case supported the judge's finding that the appellants, as lessees, did not use reasonable diligence or sound judgment in failing to develop the respective parties' lease. Thus, given the evidence and the reasonable inferences which can be made from it, we cannot say the judge was clearly erroneous in deciding the appellants breached their duty to explore and develop the property in issue.

This brings us to appellants' second argument that the trial court erred in deciding appellants' action was barred under the doctrine of laches. However, because we agree with the trial judge's decision to cancel appellants' leases as to N½ of SE¼ of Section 10, due to the appellants' breach of implied covenant to develop it, we need not address the laches issue. Accordingly, we

affirm.